UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES L. BYE, JR. and BYE
INSURANCE AND FINANCIAL
SERVICES, INC.,                                                   Case No. 08-10824

       Plaintiffs/Counter-Defendants,           Paul D. Borman
                                                            United States District Judge

v.                                                                    Michael J. Hluchaniuk
                                                                   United States Magistrate Judge

NATIONWIDE MUTUAL INSURANCE
COMPANY, an Ohio Corporation, *et al.*,

       Defendants/Counter-Plaintiffs.
_____/

OPINION AND ORDER
(1) GRANTING DEFENDANT NATIONWIDE MUTUAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT ON COUNT III OF PLAINTIFFS' COMPLAINT
AND
(2) GRANTING DEFENDANT NATIONWIDE MUTUAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I-V OF ITS COUNTERCLAIM

      This matter is before the Court, following supplemental briefing on certain issues, on Defendant /Counter-Plaintiff Nationwide Mutual Insurance Company's ("Nationwide") motion for summary judgment on all claims asserted by Plaintiffs in their Second Amended Complaint and for summary judgment on Counts I-V of Nationwide's Second Amended Counterclaim (Dkt. No. 60.) In its prior Opinion and Order dated August 5, 2010, this Court granted Nationwide's motion for summary judgment on Counts I, II, IV and V of Plaintiffs' Complaint, requested additional briefing on Count III and deferred ruling on Nationwide's motion for summary judgment on Counts I-V of

its Counterclaims. (Dkt. No. 73 "August 5, 2010 Order".) Plaintiffs (Dkt. No. 76) and Nationwide (Dkt. No. 74) have both filed their supplemental briefs. For the reasons that follow, the Court GRANTS Nationwide's motion for summary judgment on Count III of Plaintiffs' Second Amended Complaint, DISMISSES Plaintiffs' Complaint with prejudice and GRANTS Nationwide's motion for summary judgment on Counts I-V of its Counterclaim.

## I.    INTRODUCTION[1]

In its August 5, 2010 Order, the Court concluded that the parties had presented insufficient evidence and legal argument to enable the Court to determine which contract was in effect when Plaintiffs' agency was terminated and/or whether Mich. Comp. Laws § 500.1209 applies to the termination of Plaintiffs' agreement with Nationwide. (August 5, 2010 Order, 39-40.) Having received supplemental briefing on these issues, the Court concludes that the issue of which contract, the Independent Contractor Agency Agreement ("IC") or the Corporate Agency Agreement ("CA"), was in effect at the time of Plaintiffs' termination of agency is not material because both contracts contain the same exclusivity provision, which operates as a bar to Plaintiffs' claim of breach of contract based on the provisions of Mich. Comp. Laws § 500.1209 and entitles Nationwide to summary judgment on Count III of Plaintiffs' Complaint. Because Plaintiffs' only remaining defense to Nationwide's motion for summary judgment on Counts I-V of its Counterclaim is Plaintiffs' Count III breach of contract claim, Nationwide is entitled summary judgment on Counts I-V of its Counterclaim.

---

[1] The extensive facts of this matter are set forth in detail in the Court's August 5, 2010 Order and the Court will not repeat them here except as relevant to the Court's ruling on Count III of Plaintiffs' Complaint and Counts I-V of Nationwide's Counterclaim.

## II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323; *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

### III. ANALYSIS

#### A. Nationwide is Entitled to Summary Judgment on Count III of Plaintiffs' Complaint

Count III of Plaintiffs' Complaint claims that Nationwide terminated Plaintiffs' agency agreement(s) in violation of Mich. Comp. Laws § 500.1209(2). The Complaint alleges that "Nationwide breached the Agent's Agreement when it cancelled the Agent's Agreement for some reason other than those identified in MCL 500.1209(2)." (Compl. ¶ 71.) Section 500.1209(2) provides that an insurer of homes and automobiles in the State of Michigan may not cancel a contract with an independent insurance agent except for the reasons expressly enumerated in the statute, which include malfeasance, breach of fiduciary duty or trust, breach of the parties' agreement, a violation of the insurance code or submission of fewer than 25 applications for insurance in a 12 month period. Mich. Comp. Laws § 500.1209(2). The Act further provides that under no circumstances may a termination of an independent agent be based on the geographic

location of that agents' insureds or the agent's loss experience as related to that geographic locale. Mich. Comp. Laws § 500.1209(3). "Under Section 500.1209(2)-(3) of the Michigan Essential Insurance Act (MEIA), insurance companies cannot terminate non-exclusive agents "primarily" because of the location in which they sell insurance or because of a high actual or expected loss ratio, if that ratio is "related in whole or in part to the geographical location of that business." *Nassif Ins. Agency Inc. v. Civic Property and Casualty, Co.*, No. 032618, 2005 WL 712578 at * 2 (6th Cir. March 30, 2005) (citing Mich. Comp. Laws § 500.1209(3)(a)-(b)).

Plaintiffs allege in Count III of the Complaint that "Nationwide had a duty to cancel the Agent's Agreement only for one of the enumerated reasons identified under MCL 500.1209(2) where the exception under MCL 500.1209(4) is not satisfied." (Compl. ¶ 70.) The exception under MCL 500.1209(4) provides that: "Subsection (2) and the written notice requirement under section 1208b(4) do not apply with respect to an insurance producer who is an employee of an insurer or to an insurance producer who by contractual agreement represents only 1 insurer or group of affiliated insurers, if the property rights in the renewal are owned by the insurer or group of affiliated insurers and the cancellation or termination of the insurance producer's contract does not result in the cancellation or nonrenewal of any home or automobile insurance policy."

Mich. Comp. Laws § 500.1209 *et seq* ("the Act") was enacted in 1981 and "sought to eliminate arbitrary underwriting practices by insurance companies, and to predicate the availability of home and private auto insurance on relevant, non-discriminatory factors. . . . One of the purposes of the Act was to prevent insurance companies from 'redlining,' or refusing to underwrite risks in certain geographical areas." *Redman Agency, Inc. v. Allstate Insurance Co.*, No. 89-cv-114, 1991 WL 526300 at * 1 (W.D. Mich. Oct. 30, 1991). Toward this end, the Act contains certain

protections against at-will terminations of independent insurance agents. Redman, who challenged his termination without cause under the Act, "worked as an independent, non-exclusive agent with the authority to bind Allstate coverage." *Id*. The court in *Redman* principally addressed retroactive application of the Act, but in the course of its examination of the statute, it noted that the Act's protections against at-will terminations contained in section 500.1209(3) applied to "independent, multi-licensed agents." *Id*.

In an effort to avoid the exception set forth in section 500.1209(4), which removes exclusive agents like Bye from the protections of the Act, Plaintiffs allege in the Complaint that "via his participation in Nationwide's III Network [Bye] held appointments with non-Nationwide companies with the written consent of Nationwide" and that therefore he "was not an exclusive agent [for Nationwide] because he held authorizations from companies not affiliated with Nationwide." (Compl. ¶¶ 64, 66.)[2] Bye claims that in fact, by virtue of his III appointment, he was allowed to "openly compete against Nationwide" at the time of his termination "without restriction." (Pls.' Supp. Br. 6-7.) Defendant argues that Bye, who concedes that in two separate agreements he signed an exclusive representation provision, cannot seriously contend that he was not an exclusive or "captive" Nationwide agent and further responds that Nationwide's decision to permit Bye to broker certain contracts with III, a Nationwide-owned company, and only with the express written consent of Nationwide, did not negate Bye's agreement(s) to be an exclusive Nationwide agent. Defendant responds that "[c]ontrary to what Bye may allege, Bye was not permitted to generally represent other

---

[2] III (Insurance Intermediaries, Inc.) is a Nationwide-owned brokerage house with whom Bye, with the express written consent of Nationwide, was permitted to place certain risks. (Defs.' Answer to Amended Compl., Dkt. No. 24, Ex. 15, Operating Agreement with Insurance Intermediaries, Inc; *Id*. Ex. 2, Choice/Choice Plus Addendum.)

6

insurers." (Def.'s Supp. Br. 6.)

Plaintiffs have come forward with no evidence refuting the fact that Bye agreed in his agent agreement(s) to represent only Nationwide and its affiliated companies. Nor have Plaintiffs proffered evidence supporting the claim that by placing business with III, a Nationwide-owned affiliate, Bye became non-exclusive to Nationwide. In response to Defendant's motion for summary judgment, Plaintiffs are not permitted to rest on the allegations of the Complaint but must come forward with "evidence of evidentiary quality" which creates a genuine issue of material fact which a reasonable juror could resolve in Plaintiffs' favor. Even viewing the facts in the light most favorable to the them, Plaintiffs have not sustained this burden on their claim that Bye was not an exclusive Nationwide agent and that Mich. Comp. Laws § 500.1209(2) applies to Plaintiffs' breach of contract claim against Nationwide. In fact, all of the evidence, even giving Plaintiffs every favorable inference, leads to the conclusion that Bye did agree in his agent agreement(s) with Nationwide to represent "only 1 insurer or group of affiliated insurers," that III was in fact owned by Nationwide and was an affiliated Nationwide company, that Nationwide controlled all of the placements made by Bye through III and that Bye was never free to compete "openly" and "without restriction" against Nationwide. (Pls.' Supp. Br. 6-7.)

Despite his bold claim to the contrary in his Complaint and in his supplemental brief, it cannot genuinely be disputed that Bye contractually agreed to be an exclusive Nationwide agent by signing two different agreements, each of which contained the following provision:

> **Exclusive Representation**: It is agreed and understood that you will represent us exclusively in the sale and service of insurance. Such exclusive representation shall mean that you will not solicit or write policies of insurance in companies other than those parties to this Agreement, either directly or indirectly, without the written consent of these Companies. You cannot hold appointments with non-Nationwide companies without the written consent of the Companies. It is not intended that the

    use of state or federal insurance plans for risks not eligible for Nationwide shall be a violation of this clause.

Def.'s Supp. Br., Dkt. No. 74, Exs. 2 and 3, the Independent Contractor Agents Agreement ("the IC") and the Corporate Agency Agreement ("CA"), respectively, ¶ 4.[3]

    There is no genuine issue as to the fact that Bye contractually agreed to be an exclusive or "captive" Nationwide agent. Bye characterized himself throughout his pleadings and papers as a "captive agent." In his Second Amended Complaint, Bye acknowledged that he was an exclusive Nationwide "captive" agent, alleging that he relied on certain "misrepresentations by entering into a contract to become a captive agent." (Compl. ¶ 22.) In the opening remarks in their brief in response to Defendant's motion for summary judgment, Plaintiffs complained: "Nationwide employed direct writers, also known as "career" or "captive" agents, meaning they wrote only Nationwide policies. Conversely, an independent insurance agent writes for several companies." (Dkt. No. 66, Pls.' Resp. to Mot. Summ. Judg. 4.) Indeed, Bye's exclusivity was at the heart of Plaintiffs' now-dismissed fraud claims - Bye was frustrated by the fact that "independent agents"

---

[3] After reading the parties' supplemental briefs, the Court agrees with Defendant that the issue of which agreement, the IC or the CA, was in effect at the time Bye was terminated is not material for purposes deciding whether Defendant is entitled to summary judgment on Count III of Plaintiffs' Complaint or whether Nationwide is entitled to summary judgment on Counts I-V of its Counterclaim. While Plaintiffs focus in their brief on the differences between the non-compete provisions of the two agreements, these provisions are immaterial to the issue before the Court which is whether Bye was operating under a contractual agreement which limited him to representation of Nationwide and its affiliates, a question which is answered solely by reference to the exclusivity provision, paragraph 4, which is identical in both contracts. On Counts I-V of Nationwide's counterclaim, which seek amounts owed under Bye's CAP Loan obligations that became due and owing on the event of his termination, Bye states that his only defense is his claim that Nationwide terminated him in violation of Mich. Comp. Laws § 500.1209(2). (Pls.' Supp. Br. 7.) Accordingly, the non-compete provisions are wholly irrelevant to the Court's ruling on Nationwide's instant motion for summary judgment on Count III of Plaintiffs' Complaint and also irrelevant to the Court's ruling on Nationwide's motion for summary judgment on Counts I-V of its Counterclaim.

who allegedly were under the Nationwide umbrella, i.e. Allied agents, were able to sell Nationwide policies in competition with captive agents like Bye, who, according to Bye, were hamstrung by their inability to go outside the Nationwide network to the open market. Likewise, Plaintiffs' now-dismissed "silent fraud claim" was based on the allegation that Nationwide priced the products which were sold by their direct captive agents, like Bye, too high and made up their losses on these products through sales by independent Allied agents. (Compl. ¶¶ 30-35.) Thus, there is no question that Bye signed and was operating under a contractual agreement(s) to represent "1 insurer or its affiliates." Bye cannot now claim otherwise because it better suits his claim under Mich. Comp. Laws § 500.1209.

Bye argues that despite the exclusivity agreement that he signed, he was not an exclusive agent because, with Nationwide's consent, he was able to place business with the III network and thus held authorizations from companies not affiliated with Nationwide. (Compl. ¶ 66.) The reality is that he held these appointments only with the express written consent of Nationwide through III, which is a brokerage owned by Nationwide. On its website, Nationwide lists III as an affiliated company, part of the "Nationwide family." http://www.nationwide.com/affiliated-companies.jsp Bye has failed to come forward with any evidence to refute Defendants' contention that submitting customers to III, a Nationwide-owned insurance brokerage, did not alter Bye's status as an exclusive Nationwide agent - an agent who, by contract, agreed to and did represent only Nationwide and its affiliated insurers.

Bye contends that his agreement with III is sufficient to bring his termination within the purview of section 500.1209(2) because, he alleges, "captive agents who join Nationwide's III Network are allowed to openly compete against Nationwide." (Pls.' Supp. Brief, Dkt. No. 76, 6.)

This statement is directly contradicted by Bye's now-dismissed fraud claims but, more importantly, by Bye's own deposition testimony:

> Q: [W]hat's your understanding of the purpose of this [Choice/Choice Plus Addendum] Agreement [permitting placements with III]?
>
> A: By signing this . . . we gave up our DCIC but allowed us to get appointed with III, Insurance Intermediaries, Incorporated, which is a Nationwide brokerage house.
>
>     *       *       *
>
> Q: For the record, explain what it means to be able to write for III?
>
> A: To be able to write for III allowed you to access to companies like – it used to be Foremost, we could have our own separate agreement with them, but Nationwide pulled that under and said no, it's going to be owned by Nationwide, and you can write Foremost, Progressive, GMAC, Bristol West, AIG.
>
>     *       *       *
>
> Q: And what's your understanding as to why Nationwide would let you write for these other companies albeit through this brokerage?
>
> A: Well, when you looked at it, I mean, you know, I don't know what their exact rationale was behind it. That was never explained to us. But when you looked at it, a lot of these products really didn't compete with Nationwide all that much because most of these were non-standard companies, and Nationwide was a standard company.
>
>     *       *       *
>
> Q: Going to paragraph number 4 on the next page, that paragraph number 4 has the heading "Exclusive Representation." I'm going to read the first couple of sentences and ask you a question. It says, "It is agreed and understood that the Agency, its Principal, directors, officers and employees, will represent Nationwide exclusively in the sale and service of insurance. Such exclusive representation shall mean that they will not solicit or write policies of insurance in companies other than those parties to this Agreement, either directly or indirectly, without the written consent of Nationwide." Do you see that?

> A: Yes, I do.
>
> Q: Have you ever violated this provision?
>
> A: No, I have not.
>
> Q: Have you ever written policies of insurance for companies without the written consent of Nationwide?
>
> A: No, I have not. I've written policies through III and commercial policies with the consent of Nationwide.

Deposition of Charles Bye, June 18, 2009, Dkt. No. 74, Def.'s Supp. Brief, Ex. 1, 79-80, 92-93; Ex. 5, Choice/Choice Plus Addendum.

Bye went on in his deposition to deny that he ever wrote policies for Frankenmuth Mutual, a non-Nationwide company outside the III network, admitting that his wife's agency may have done so but that he personally was obligated to stay within the Nationwide network, or decline the business:

> Q: Have you ever been involved in directing Nationwide policyholders to your wife's agency?
>
> A: What we would do when somebody called in is my employees were told to, number one, quote it through Nationwide because that's where we got bonuses. If Nationwide wasn't competitive, quote it through III. At that point if we couldn't help them, then we would refer them because we didn't have an opportunity to sell it. I mean if we were overpriced on everything, as far as I was concerned, we were done. We couldn't help that client.

*Id.* at 93-94.

Clearly, by his own admission, Bye's statement in his supplemental brief that he was not an exclusive Nationwide agent because he was able to "openly compete" against Nationwide through Nationwide's III Network is at best a self-serving characterization of the facts and approaches a blatant attempt to mislead the Court. Bye was not, by his own admission and averments in his

Complaint, in any sense of the word an "independent agent" who was allowed to "openly compete" against Nationwide. He was permitted by Nationwide to place certain business with III, a Nationwide affiliated company. There is no dispute that, in every material respect, Nationwide controlled the insurance that Plaintiffs could and could not write. As Bye concedes, pursuant to his operating agreement with III, his III appointments were automatically cancelled on the occurrence of his termination by Nationwide. This further supports the conclusion that the III business was through a Nationwide affiliate and was within the framework of Bye's exclusive representation of Nationwide. (Pls.' Supp. Br. Ex. G, III Termination of Appointment Letter.)

Bye served but one master and this fact was at the heart of Plaintiffs' Complaint. Even Bye's wife, who was just trying to "help her husband" in creating her own independent agency, recognized that her LLC was necessary because "it would be inappropriate based on my husband's employment with Nationwide to start another company on his own." (Def.'s Mot. Summ. Judg., Deposition of Kay Bye, June 18, 2009, 10.) If, as Bye asserts in his supplemental brief, he was free at the time of his termination to "openly compete against Nationwide without restriction," the creation of his "wife's" independent agency would have been an unnecessary undertaking. Bye has offered no factual or legal basis for the Court to conclude that he was not an exclusive Nationwide agent who contractually agreed to write insurance only for Nationwide and its affiliates.

Nor is there any question that Nationwide, at all times, owned Bye's book of business. Plaintiff conceded, and indeed objected to, the fact that Nationwide "owned his book of business." (Dkt. No. 66, Pls.' Resp. to Def.'s Mot. Summ. Judg. 14.) Indeed, this ownership right was at the heart of Bye's complaint that Nationwide made a profit off of "churning" agents, allegedly taking a failed agent's book of business and selling it to a new agent for a higher fee, leaving the "churned"

agent in the dust. (Pls.' Resp. to Mot. Summ. Judg. 18.) Indeed, Bye went so far as to characterize this "profit" as a franchise fee and to allege that Nationwide violated Michigan franchise law through this conduct, an argument which the Court rejected. In support of his allegation that Nationwide owned the agent's book of business, Bye referred the Court to the testimony of Michael Whitehead who explained in his deposition the difference between a captive agent, such as Bye, and independent agents:

> Q: Could you give me your understanding of the difference between a direct writer and an independent agent?
>
> A: The direct writer or the captive agent, it can only sell products that are underwritten by the company to whom they are the direct writer for. For example, a Nationwide agent or State Farm agent can only sell products and services through that one carrier.
>
> Whereas an independent agent has the opportunity to sell lines of insurance through several different companies. The other major difference is, the captive agent, the direct writer agents does not actually own the business that he or she writes, whereas an independent agent actually owns the business, meaning the policyholder information, the expiration date, all that kinds of stuff.
>
> On the captive side, that all belongs to the company, the carrier, but an independent agent owns that and can place it with whomever they have a contract.

Deposition of Michael Whitehead, Jr., March 13, 2009, Dkt. No. 67, Pls.' Resp. to Mot. Summ. Judg. Ex. A-1, 24.) This same reservation of property rights was held by Nationwide's affiliate, III, with respect to Plaintiffs' business brokered through them. (Dkt. No. 24, Ex. 15, III Operating Agreement ¶ 31; Def.'s Supp. Br. Ex. G, Termination Letter to Bye from III.) Nor has Bye provided any evidence, or even made a claim, that the termination of his agency resulted in the cancellation or nonrenewal of any home or automobile insurance policy.

Plaintiffs provide the Court with no evidence to suggest that the exclusivity exception in

Mich. Comp. Laws § 500.1209(4), each element of which is met in the instant case, should not operate to bar Plaintiffs' claim under Mich. Comp. Laws § 500.1209(2). The Act's bar against at-will terminations was expressly intended to cover terminations of "independent," "non-exclusive," "multi-licensed" agents. *Redman*, 1991 WL 526300 at * 1. The Act contains an express exemption from its protections for agents like Bye who have an exclusive representation agreement with a single insurer or its affiliated companies who own the property rights in the policies sold by their exclusive agents. The Act's goals of eliminating red-lining and discriminatory practices through arbitrary termination of independent agents are not implicated where, as here, the terminating company discharges an exclusive agent but retains the book of business and the rights to renewal and the termination does not result in the cancellation of any contract of insurance. The Court concludes that Mich. Comp. Laws § 500.1209(2) does not apply to Bye's termination, and Nationwide was free, under the parties' agreement(s), to terminate Bye for any reason, or for no reason.[4]

---

[4] Nationwide states that Bye was terminated for placing business with non-Nationwide insurers through his wife's agency while he was still a Nationwide exclusive agent and that his termination on this basis was upheld by the Agent Review Board. (Def.'s Supp. Br. 4-5.) Nationwide argues, therefore, that even if Bye were considered an independent agent entitled to the protections of Mich. Comp. Laws § 500.1209(2), Bye was terminated for one or more of the permissible reasons listed in the Act, i.e. malfeasance, breach of trust and breach of the parties' agreements, and therefore his termination was permissible under the statute.

Bye responds that he has no idea why he was terminated and that the decision to terminate him was "arbitrary." (Pls.' Supp. Br. 5-6.) Bye claims that Nationwide should not be allowed to assign a reason in retrospect when it did not do so at the time. But this argument is contradicted by Bye's deposition testimony where he admitted that, at the time of his hearing before the Agent Review Board, he told the members of the Review Board that he assumed he was terminated because "my wife has an independent agency." (Def.'s Supp. Br., Ex. 1, Bye Dep. 223.) It appears to the Court that it is Bye, not Nationwide, who is engaging in revisionist history on this point. That Bye was aware of the reason for his termination is also corroborated by Bye's wife's testimony, quoted above, that her agency was set up in her name because it would have been "inappropriate" to set it up in her husband's name while he was still employed by Nationwide. " The purpose of

### B.     Nationwide is Entitled to Summary Judgment on Counts I-V of its Counterclaim

Plaintiffs do not contest the fact that upon termination, the amounts outstanding on Plaintiffs' CAP loans became due and payable.  Plaintiffs do not dispute the fact that these loans are presently in default.  Plaintiffs' outstanding obligation on these loans is at the very heart of their now-dismissed fraud claims.  The cumulative balance of these four loans was $245,743.96 as of April 9, 2010.  (Def.'s Mot. Summ. Judg. Ex. 19, Declaration of Gerald McCann, ¶¶ 3-9.)  Nationwide Bank assigned right, title and interest on Plaintiffs' loans to Nationwide, who now is the holder of these loans.  (Def.'s Mot. Summ. Judg. Ex. 19, McCann Decl. ¶¶ 7-8.)  Plaintiffs do not contest these facts with any evidence or argument, stating only that "Charles Bye submits his breach of contract claim as a defense to Nationwide's counterclaim."  (Pls.' Supp. Br. 7.)  Because the Court has concluded that Bye's claim for breach of contract based on Mich. Comp. Laws § 500.1209(2) must fail, Bye has offered no other defense to Counts I-V of Nationwide's Counterclaim.  The Court concludes that Nationwide is entitled to summary judgment on Counts I-V of its Counterclaim.

---

[Mich. Comp. Laws § 500.1209] is to prevent so-called "redlining."  It does not prevent the termination of agents who fail to perform as provided by the contract between the parties."  *Nassif, supra*, 2005 WL 712578 at * 2 (internal quotation marks and citations omitted).  Plaintiffs provide hypotheses, but no evidence on which the Court could conclude that the termination was for a reason other than that proffered by Defendant.  Plaintiffs could have, for example, provided testimony from members of the Agent Review Board, who upheld the decision to terminate, to establish that the termination was in fact for some impermissible reason under the Act.  Plaintiffs have provided no such evidence.  Plaintiffs simply call the decision to terminate "arbitrary," and state that the termination could have been for "any one of a number of reasons."  Plaintiffs hypothesize that the termination could have been for defaulting on Plaintiffs' CAP Loans, which also would have constituted a breach of the parties' agreement(s). (Pls.' Supp. Br. 5.)  Termination on this basis, the Court notes, would also have been acceptable under the Act.

    Plaintiffs' burden on summary judgment is greater than this and has not been sustained here.  Even assuming that Mich. Comp. Laws § 500.1209 applied to the termination of Plaintiffs' exclusive agency, which the Court concludes it does not, Count III of Plaintiffs' Complaint is unsustainable for this additional reason.

15

## IV. CONCLUSION

For the foregoing reasons, the Court:

(1) GRANTS Nationwide's motion for summary judgment on Count III of Plaintiffs' Complaint and DISMISSES Plaintiffs' Complaint with prejudice; and

(2) GRANTS Nationwide's motion for summary judgment on Counts I-V of its Counterclaim.

This Order does not close the case as Counts VI-XX of Defendants/Counter-Plaintiffs Counterclaim remain.

IT IS SO ORDERED.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: March 25, 2011

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 25, 2011.

S/Denise Goodine
Case Manager